**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**VANESSA M.,**[1]

       **Plaintiff,**

                              **Case No. 2:22-cv-2788**
     **v.**                       **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

       **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Vanessa M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

On September 18, 2019, Plaintiff protectively filed her current application for benefits[3], alleging that she has been disabled since April 1, 2019.[4] R. 158–60, 257–62. The application was denied initially and upon reconsideration. R. 175–80, 182–86. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 187–88. ALJ Scott Tirrell held a hearing on March 26, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 88–144. In a decision dated July 2, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 25, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 67–81. That decision became final when the Appeals Council declined review on March 18, 2022. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 12, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[5] On May 15, 2023, the case was reassigned to the undersigned. ECF No. 13. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]Plaintiff had previously filed two other applications for benefits, which were denied. R. 146, 299–300.

[4] Plaintiff later amended her alleged disability onset date to June 25, 2019. R. 67.

[5]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff meets the insured status requirements of the Social Security Act through September 31, 2024. R. 69. Plaintiff was 37 years old on June 25, 2019, her amended alleged disability onset date. R. 79. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 70.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, status post surgery; failed back syndrome (also diagnosed in the record as postlaminectomy syndrome); cervical degenerative disc disease; left carpal tunnel syndrome; gluteal tendinitis; and obesity. R. 70.  The ALJ also found that Plaintiff's medically determinable impairments of urinary tract infection, left renal calculi, and visual impairment were not severe, and that Plaintiff's alleged right carpal tunnel syndrome, right De Quervain's tenosynovitis, left shoulder disorder, and asthma/bronchitis were not medically determinable. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 71–79. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a storage facility rental clerk. R. 79.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs─*e.g*., jobs as a sorter, a document preparer, and a food checker─existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 80. The ALJ therefore concluded that Plaintiff was not disabled within the meaning

of the Social Security Act from June 25, 2021, her amended alleged disability onset date, through the date of the decision. R. 80.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 10. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 9.

## IV.  SUMMARY OF RELEVANT MEDICAL EVIDENCE

On October 11, 2019, Silvia Knoploch, M.D., Plaintiff's treating physiatrist, completed a seven-page, check-the-box, and fill-in-the-blank form entitled "SPINAL Impairment Questionnaire." R. 415–21 ("2019 opinion"). Dr. Knoploch had treated Plaintiff every two months (or more frequently as needed) beginning on April 28, 2011, and had most recently examined Plaintiff on August 19, 2019. R. 415. The doctor diagnosed failed back syndrome, low back pain, and bilateral lower extremity radiculopathy. *Id*. According to Dr. Knoploch, Plaintiff's "condition is chronic and permanent; improvement is not expected." *Id*. In supported of these diagnoses, Dr. Knoploch identified the following positive clinical findings: limited range of motion in the lumbar area (moderately decreased in all planes); tenderness in the lumbar spine and paraspinals; sensory loss in the lumbar area, with decreased sensation to pinprick at the L4-5 distribution (left greater than right); muscle weakness in the lumbar area with mild left ankle weakness; and "[d]ecreased balance on left lower extremity with heel/toe and unipedal stance."

8

R. 415–16. Dr. Knoploch also relied on a March 16, 2019, MRI of the lumbar spine [6] to support

her assessment. R. 417. Plaintiff's primary symptoms were identified as low back pain, buttock

pain, bilateral lower extremity pain, and intermittent numbness in the legs and toes. *Id*.

According to Dr. Knoploch, Plaintiff's symptoms and functional limitations were reasonably

consistent with the physical and/or emotional impairments described in the evaluation. *Id*. Asked

to described the nature of Plaintiff's pain, Dr. Knoploch responded, "spine and spine nerves"

located in the low back, buttocks, and bilateral lower extremities. *Id*. Dr. Knoploch noted that

Plaintiff's pain was constant and its frequency fluctuated. *Id*. The precipitating factors leading to

Plaintiff's pain were prolonged walking, prolonged standing, bending, and lifting. R. 417–18.

Plaintiff's pain could not be completely relieved with medication without unacceptable side

effects. R. 418. Dr. Knoploch indicated that she had substituted medications in an attempt to

produce less symptomatology or relieve side effects and that Plaintiff's other treatment had

included spine surgery on February 25, 2008; several spine injections between 2006 and May

2019; and physical therapy. R. 419. Dr. Knoploch opined that, in an eight-hour workday,

Plaintiff could sit for a total of 4 hours and stand/walk for a total of 2 hours; Plaintiff should not

sit continuously but must get up and move around every 15 to 20 minutes for five minutes before

sitting down again; and Plaintiff should not stand/walk continuously in a work setting. R. 418.

---

[6] That MRI revealed, *inter alia*, "multilevel degenerative disc disease" and, "[a]t L5-S1, there is a stable small central disc protrusion and a stable small left foraminal disc protrusion." R. 407. "At L4-L5, there is a stable minimal right lateral to foramen symmetric disc protrusion with mild asymmetric right foraminal narrowing[.]" *Id*. "At L3-L4, there's been previous bilateral hemilaminectomies. On today's exam, there is a stable moderate diffuse disc annulus bulge along with a stable mild superimposed central disc herniation with minimal inferior to the disc. There is no significant central spinal stenosis. There is stable mild to moderate bilateral foraminal narrowing." *Id*. "At L2-L3, there is [sic] been previous bilateral hemilaminectomies. There is a stable moderate central disc herniation without significant central spinal stenosis. There is stable mild bilateral foraminal narrowing." *Id*.

Plaintiff could frequently lift and carry up to 5 pounds and could occasionally lift and carry 5 to 10 pounds. R. 418–19. According to Dr. Knoploch, Plaintiff's pain and symptomatology were severe enough to interfere constantly with her attention and concentration and that her impairments were ongoing, creating an expectation that they would last at least twelve months. *Id*. Dr. Knoploch denied that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. R. 419–20. Dr. Knoploch opined that Plaintiff was capable of low stress work, explaining that "[h]igher levels of stress may impact on pain intensity and frequency." R. 420. According to Dr. Knoploch, Plaintiff would need to take unscheduled breaks lasting at least 5 to 10 minutes every 30 to 60 minutes at unpredictable intervals during an eight-hour workday. *Id*. Moreover, Plaintiff's condition interfered with her ability to keep the neck in a constant position (*e.g.*, by looking at a computer screen or down at a desk) and she could not perform a full-time competitive job that required that activity on a sustained basis. *Id*. Plaintiff's impairments were likely to produce "good days" and "bad days" and, on average, she would likely be absent from work more than three times a month as a result of her impairments or treatment. *Id*. Dr. Knoploch indicated that Plaintiff's course of treatment was consistent with her symptoms and limitations. R. 421. Asked to identify any other limitations that affect Plaintiff's ability to work at a job on a sustained basis, Dr. Knoploch identified the following additional limitations: need to avoid heights; no pushing; no pulling; no kneeling; no bending; and no stooping. *Id*. According to Dr. Knoploch, Plaintiff's symptoms and functional limitations were reasonably consistent with the clinical and/or objective findings discussed in the report. *Id*. Finally, Dr. Knoploch opined that Plaintiff's symptoms and related limitations existed as of June 24, 2019. *Id*.

On March 31, 2021, Dr. Knoploch completed a five-page check-the-box and fill in the

blank form entitled "Multiple Impairment Questionnaire." R. 739–43 ("2021 opinion"). Dr.

Knoploch indicated she had treated Plaintiff every two months (or more frequently as needed)

beginning on April 28, 2011, and had most recently examined Plaintiff on March 4, 2021. R.

739. Dr. Knoploch diagnosed failed back syndrome, low back pain, and lumbar radiculopathy.

*Id*. In support of her diagnoses, Dr. Knoploch relied on a January 22, 2020 MRI;[7] decreased

---

[7] That MRI of Plaintiff's lumbar spine revealed the following:

> T12-L1: No disc disease, spinal stenosis or foraminal stenosis.
> L1-L2: There is moderate bilateral facet arthrosis with very mild degenerative canal stenosis. Neural foramina are patent bilaterally.
> L2-L3: There is a degenerative retrolisthesis with unroofing of the disc cartilage and a broadbased bulge of the annulus fibrosis with a small focal midline disc protrusion and annular fissure contributing to mild degenerative canal stenosis. There is a laminectomy defect. There is mild bilateral facet arthrosis. Neural foramina are patent bilaterally.
> L3-L4: There is a degenerative retrolisthesis with unroofing of the disc cartilage. There is a laminectomy defect with moderate to severe bilateral facet arthrosis. There is a midline disc extrusion with caudal migration of disc herniated fragments extending dorsal to the body of L4. Despite laminectomy, there is a mild degenerative canal stenosis. Because of the retrolisthesis and unroofing of the disc cartilage and facet hypertrophic change there is moderate foramen stenosis on the right compressing the perineural fat and secondarily deforming the exiting right L3 nerve root.
> L4-L5: There is mild bilateral facet arthrosis without canal stenosis. There is a right-sided foramen/extraforaminal disc herniation compressing the exiting right L4 nerve root.
> L5-S1: There is a diffuse bulge of the annulus fibrosis with mild bilateral facet arthrosis and a grade 1 degenerative spondylolisthesis. Broad-based foramen disc herniation on the left compressing the perineural fat without compression or deformity of the exiting left L5 nerve root.
>
> Impression:
> Postoperative changes at L2-3 and L3-4 with degenerative change in disc herniations as described. There is moderate foramen stenosis at L3-4 on the right. There is a right-sided L4-5 foramen/extraforaminal disc herniation compressing the exiting right L4 nerve root. There is a broad-based disc herniation on the left at L5-S1 compressing the perineural fat but sparing the exiting left L5 nerve root.

R. 488–89.

sensation in a L4-L5 distribution; decreased balance on the left leg with heel/toe and one-leg stand; and decreased lumbar range of motion. *Id*. Dr. Knoploch expected Plaintiff's ongoing impairments to last at least 12 months and she denied that Plaintiff was a malingerer. *Id*. Dr. Knoploch identified Plaintiff's primary symptoms as low back pain, buttock pain, bilateral leg pain, intermittent numbness in the legs/toes, and impaired balance. R. 740. Plaintiff's pain was described as daily, constant, and originating in Plaintiff' spine and spine nerves and located in the lumbar spine and bilateral lower extremity. *Id*. Her pain was precipitated and/or aggravated by prolonged walking/standing, bending, and lifting. *Id*. Dr. Knoploch had substituted medications in an attempt to produce less symptomatology or to relieve side effects and that Plaintiff's treatment had also included spine surgery, past use of medical THC, spinal injections, and physical therapy. *Id*. Plaintiff's course of treatment was consistent with the symptoms and limitations described in the questionnaire. *Id*. Asked to estimate Plaintiff's RFC if placed in a normal competitive five day a week work environment on a sustained basis, Dr. Knoploch opined that, in an eight-hour day, Plaintiff could sit for a total of 4 hours and stand/walk for a total of 2 hours; she should not sit continuously in a work setting but must get up and move around every 15 to 20 minutes for five minutes before sitting down again. R. 741. It was not medically necessary for her to elevate her legs while sitting. *Id*. Plaintiff could frequently (one-third to two-thirds of an eight-hour day) lift and carry up to 5 pounds and could occasionally (up to one-third of an eight-hour day) lift and carry 5 to 10 pounds. *Id*. Plaintiff had no significant limitations in reaching, handling, or fingering. R. 742. Dr. Knoploch opined that Plaintiff' symptoms would likely increase if she were placed in a competitive work environment, explaining that she "[e]xpects increase in pain/fatigue if restrictions not observed = may need escalation of pain medications." *Id*. Dr. Knoploch further opined that Plaintiff's experience of

12

pain, fatigue, or other symptoms would be severe enough to frequently interfere with her attention and concentration. *Id*. Dr. Knoploch also opined that Plaintiff would need to take unscheduled breaks to rest for 5 to 15 minutes (depending on the intensity of pain) several times a day at unpredictable intervals. *Id*. Plaintiff had "good days" and "bad days" and would likely be absent from work more than three times a month as a result of her impairments or treatment. R. 743. Dr. Knoploch denied that Plaintiff's emotional factors contributed to the severity of her symptoms and functional limitations. *Id*. Plaintiff's symptoms and related limitations as detailed in the questionnaire applied as far back as April 1, 2019. *Id*. Finally, Dr. Knoploch indicated that Plaintiff's symptoms and functional limitations were reasonably consistent with the clinical and/or objective findings discussed in the report. *Id*.[8]

## V.   DISCUSSION

### A.   Dr. Knploch's Opinions

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Knoploch's opinions. *Plaintiff's Brief*, ECF No. 8, pp. 13–19; *Plaintiff's Reply Brief*, ECF No. 10, pp. 1–3. For the reasons that follow, this Court disagrees.

The ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically,

---

[8] The ALJ also considered that, on May 20, 2019, Dr. Knoploch examined Plaintiff and noted, *inter alia*, that Plaintiff should continue with light duty at work. R. 72. However, the ALJ went on to find that Dr. Knoploch's finding in this regard "was prior to the claimant's amended alleged onset date [of June 25, 2019], and did not include any opinion as to the claimant's specific functional capacity for work activities." R. 78. Plaintiff does not challenge the ALJ's consideration of the doctor's opinion in this regard, and the Court therefore will not further address that consideration in its discussion.

the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[9] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

---

[9] As previously noted, Plaintiff's current claim was protectively filed on September 18, 2019.

The regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

At step four of the sequential evaluation process in this case, the ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant is able to occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can frequently balance; and can occasionally stoop, kneel, crouch, and crawl. Further, the claimant can never work at unprotected heights or work with machinery involving exposed moving mechanical parts. Lastly, the claimant is able to frequently handle, finger and feel with the non-dominant left upper extremity.

R. 71. In making this finding, the ALJ characterized, *inter alia*, Dr. Knoploch's 2019 and 2021

opinions as not persuasive, reasoning as follows:

> Dr. Knoploch also completed a Spinal Impairment Questionnaire, dated October 11, 2019, wherein she diagnosed the claimant with failed back syndrome; bilateral lower extremity radiculopathy; and low back pain with a prognosis noted as "chronic and permanent; improvement not expected." Positive clinical findings were noted at tenderness and decreased range of motion of the spine; decreased sensation to pinprick at the L4-5 distributions, left greater than right; muscle weakness of the left ankle; and decreased balance on left lower extremity with heel/toe and unipedal stance. Dr. Knoploch opined that the claimant was limited to sitting up to four hours in an eight-hour workday; standing and/or walking up to two hours in an eight-hour workday; and would have to get up and move around every 15-20 minutes for five minutes at a time. It was further opined that the claimant could only occasionally lift and/or carry a maximum of ten pounds; would have to take unscheduled work breaks every 30-60 minutes for at least five to ten minutes at a time; and was precluded from pushing, pulling, kneeling, bending and stooping. It was further opined that she would likely be absent from work more than three times a month. It was noted that the claimant had been prescribed oxycodone, zonisamide and tizanidine with no side effects. Dr. Knoploch dated the claimant's symptoms and limitations back to June 24, 2019. (Exhibit 2F)

> Dr. Knoploch thereafter completed an updated Questionnaire dated March 31, 2021 wherein she diagnosed the claimant with failed back syndrome; low back pain; and lumbar radiculopathy. It was reported the claimant had primary signs and symptoms of low back pain, buttock pain, bilateral leg pain, intermittent numbness in legs and toes, and impaired balance. Dr. Knoploch opined that the claimant was limited to sitting up to four hours in an eight-hour workday; standing and/or walking up to two hours in an eight-hour workday; and would need to get up and move around every 15-20 minutes for five minutes at a time. It was further opined she could occasionally lift a maximum of ten pounds; would need to take several unscheduled breaks in an eight-hour workday for 5-15 minutes at a time "depending on intensity of pain," and she would likely be absent from work more than three times a month. It was noted that the claimant had been prescribed oxycodone, zonisamide and ibuprofen with no side effects. Dr. Knoploch dated these symptoms and limitations back to April 1, 2019. (Exhibit 15F)

> The opinions of Dr. Knoploch are persuasive as to the absence of side effects from the claimant's medication, which is consistent with the overall record, including Dr. Knoploch's own treatment records (Exhibits 3F, 8F). Further, for the reasons discussed herein, I find that the opined limitation to two hours of combined standing and walking, and as to lifting and carrying consistent with sedentary work activity, are also consistent with the overall record. *However, the opinions are otherwise not persuasive, including as to limitations opined for sitting, for the need to change positions, as to likely absences, and as to postural limitations assessed, as the*

16

*assessed limitations are not supported by the overall record, including the records of Dr. Knoploch. Nor was there an explanation supporting these restrictions in the forms themselves.*

R. 78–79 (emphasis added).

Plaintiff challenges the ALJ's consideration of Dr. Knoploch's opinions, arguing that the ALJ mischaracterized the opinions when he stated that the doctor's opinions did not include an explanation supporting the opined restrictions. *Plaintiff's Brief*, ECF No. 8, pp. 13–16. Plaintiff further contends that the ALJ did not adequately explain how he considered the regulatory factors of supportability and consistency: rather, Plaintiff argues, the ALJ simply concluded that Dr. Knoploch's opinions were not supported by the overall record, but he did not explain this vague conclusion, thus precluding judicial review. *Id.* at 16–19. The Commissioner takes the opposite position. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 9, pp. 13–18. Plaintiff contends in reply that the Commissioner impermissibly relied on *post hoc* rationalization to defend the ALJ's decision. *Plaintiff's Reply Brief*, ECF No. 10, pp. 1–3.

The Court is not persuaded that this issue requires remand. As a preliminary matter, Plaintiff has not shown that the ALJ improperly mischaracterized Dr. Knoploch's opinions when he found that they did not include "an explanation supporting these restrictions [sitting limited to four hours, a need to change positions, likely absences per month, and postural limitations] in the forms themselves." R. 79. The evidence that Plaintiff points to as belying the ALJ's characterization in this regard are simply findings that Dr. Knoploch listed to support her *diagnoses*, not explanations for her opined limitations. R. 415–17, 420–21, 739, 741–43. However, even if the ALJ erred in this regard and should have broadly construed this cited evidence as explanations for Dr. Knoploch's opined limitations, it is not apparent to the Court— nor does Plaintiff explain—how the doctor's list of evidence supports her articulated restrictions

17

of, *inter alia*, sitting limited to four hours, the need to change positions, and the likely absences per month. For example, when asked what factors precipitate pain, Dr. Knoploch responded in her 2019 opinion, "prolonged walking, prolonged standing, bending, lifting." R. 417–18. Similarly, in her 2021 opinion, Dr. Knoploch identified "prolonged walking/standing, bending, lifting" as factors that precipitate and/or aggravate Plaintiff's pain. R. 740. Notably, in neither opinion did Dr. Knoploch identify prolonged <u>sitting</u> as a precipitating or aggravating pain factor. R. 417–18, 740. Moreover, the ALJ credited Dr. Knoploch's opinions to the extent that they limited Plaintiff's ability to stand/walk and lift. R. 71, 79. In addition, the vocational expert testified that at least two of the three jobs that he identified—sorter and document preparer[10]—do not involve any stooping. R. 140–41 (reflecting further that an inability to bend at the waist is similar to, or the same as, stooping); *see also Penrose v. Comm'r of Soc. Sec.*, No. 1:20-CV-00011, 2020 WL 7640585, at *7 (D.N.J. Dec. 23, 2020) ("At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy."). Accordingly, based on this record, the Court cannot say that the ALJ erred in this regard.

Plaintiff also complains that the ALJ failed, in his consideration of Dr. Knoploch's opinions, to adequately consider and explain the applicable regulatory factors. *Plaintiff's Brief*, ECF No. 8, pp. 16–19. This Court again disagrees. As noted above, the ALJ found persuasive Dr. Knoploch's opinions regarding the limitation to two hours of combined standing and walking and lifting and carrying consistent with sedentary work, on the ground that these limitations were "consistent with the overall record." R. 79. The ALJ found unpersuasive Dr. Knoploch's opined

---

[10] Plaintiff's counsel and the vocational expert mistakenly stated that the third job identified by the expert was cutter paster, rather than food checker. *Compare* R. 134–35 *with* R. 141.

limitations for sitting, the need to change positions, the likely absences, and the postural limitations because they "are not supported by the overall record, including the records of Dr. Knoploch." *Id*. A fair reading of the ALJ's discussion as a whole supports his consideration of Dr. Knoploch's opinions in this regard. Earlier in the decision, the ALJ expressly acknowledged the proper standard under 20 C.F.R. § 404.1520c. R.71. The ALJ also specifically considered Dr. Knoploch's treatment notes that indicated in August 2019 and October 2019, *inter alia*, that Plaintiff was in no acute distress and had normal motor strength except for mild left ankle weakness, and that her straight leg raise test was negative. R. 72. "The ALJ was not required to repeat this information for the sake of elaborating on [his] findings of persuasiveness [of Dr. Knoploch's opinions]." *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021). Based on this record, the ALJ sufficiently considered the supportability of Dr. Knoploch's opined limitations. *See id*.; *see also Pipkin v. Kijakazi*, No. CV 22-2-E, 2023 WL 411291, at *1 (W.D. Pa. Jan. 25, 2023) ("'[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion[.]'") (quoting *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021)); *Tyler E. K. v. Comm'r of Soc. Sec.*, No. 21-9623, 2022 WL 3913559, at *6 (D.N.J. Aug. 31, 2022) (finding that the ALJ appropriately considered the supportability and consistency factors by citing the physician's treatment notes and other evidence in the record).

In addition, although the ALJ did not expressly use the word "consistency" when considering Dr. Knoploch's opined limitations for sitting, the need to change positions, the likely absences, and the postural limitations, the ALJ implicitly considered the consistency of such limitations when he found that those limitations were not supported in the "overall record[.]" R. 79. For example, the ALJ considered at step four, *inter alia*, that in December 2019, an

examination by Jason Smith, M.D., Plaintiff's physical medicine and rehabilitation specialist, revealed that Plaintiff had, *inter alia*, 5/5 motor strength throughout; in January 2020, Dr. Smith noted that Plaintiff was able to manage her discomfort with ibuprofen; in August 2020, a consultative orthopedic evaluation by Betty Vekhnis, M.D., revealed, *inter alia*, that Plaintiff's cervical spine showed no vertebral tenderness, no paraspinal spasm, and full range of motion, tenderness at L3-4 with no spasms, and flexion to 50 degrees; that Plaintiff's lower extremities showed non-tender range of motion in the hips, knees, and ankles, no gross sensory loss, and 4/5 motor strength in the left hip flexors and left extensor hallucis longus; that Plaintiff had 5/5 motor strength in December 2020; the January 8, 2021, evaluation by Oluchi Anoskie, A.P.N., revealed, *inter alia*, normal lower extremity range of motion with no tenderness or masses noted; that motor strength was 5/5 in the right lower extremity and 4-5/5 in the left lower extremity; that reflexes were 2/2 throughout the lower extremities; that sensation to light touch in both feet was normal, as was muscle tone; that the spine had a normal curvature; that palpation of the spine revealed no midline tenderness; and that there was no instability of the spine with flexion/extension;  and that electrophysiologic findings on January 13, 2021, were normal and showed no evidence of lumbosacral radiculopathy, lumbosacral plexopathy, focal peripheral nerve compression, or underlying peripheral neuropathy. R. 73–75. Accordingly, a fair reading of the ALJ's decision establishes that the ALJ found that Dr. Knoploch's opined limitations for sitting, the need to change positions, the likely absences, and the postural limitations were not persuasive because they were not consistent with other record evidence as detailed above. *See Pipkin*, 2023 WL 411291, at *1 ("'[C]onsistency relates to the relationship between a medical source's opinion and other evidence within the record.'") (quoting *Cook*, 2021 WL 1565832, at *3); *B.K. v. Comm'r of Soc. Sec. Admin.*, No. CV 21-5732, 2022 WL 1718047, at *4 (D.N.J.

May 27, 2022) ("In terms of consistency, a medical opinion will be more persuasive when it is consistent 'with the evidence from other medical sources and nonmedical sources in the claims.'") (internal citations omitted); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings); *cf. Diaz*, 577 F.3d at 504 ("The ALJ, of course, need not employ particular 'magic' words: '*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.'") (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)); *Serrano*, 2021 WL 4477137, at *3–4. In short, substantial evidence supports the ALJ's consideration of Dr. Knoploch's opinions and the applicable regulatory factors.

Finally, to the extent that Plaintiff insists that the ALJ erred by failing to properly consider evidence that Plaintiff believes is consistent with Dr. Knoploch's limitations—or otherwise undermines the ALJ's consideration of these opinions—where the "substantial evidence" standard is satisfied, the Court must uphold the ALJ's decision even if contrary evidence justifies the opposite conclusion. *See Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (stating that the Court will uphold the ALJ's decision even if contrary evidence exists that supports the opposite conclusion, "as long as the 'substantial evidence' standard is satisfied") (citations omitted); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec.*

*Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

In short, for all these reasons, the Court concludes that the ALJ's consideration of Dr. Knoploch's opinions enjoys substantial support in the record.

### B.   Subjective Statements

Plaintiff also challenges the ALJ's consideration of her subjective complaints, contending that the ALJ did not provide any explanation for discounting these complaints. *Plaintiff's Brief*, ECF No. 8, pp. 19–23; *Plaintiff's Reply Brief*, ECF No. 10, pp. 3–4. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 72–79. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 77. As previously noted, the ALJ detailed years of medical

evidence and record testimony to support his findings. R. 72–79. The ALJ specifically considered, *inter alia*, that Plaintiff's examinations revealed generally normal/full motor strength except for mild left ankle weakness; the fact that no side effects from oxycodone, zonisamide, tizanidine, or ibuprofen were noted; the fact that Plaintiff weaned herself off opioid pain medications and managed her discomfort with ibuprofen; the fact that Plaintiff suffered from numbness and tingling in both legs and low back pain, but that electrodiagnostic testing of the extremities performed in January 2021 revealed normal electrophysiologic findings without any evidence of lumbosacral radiculopathy, lumbosacral plexopathy, focal peripheral nerve compression, or underlying peripheral neuropathy; Plaintiff's testimony that her upper extremities were not affected by her neck pain and that she could walk past only three houses and that "she was not walking her dog for an hour, as stated by Dr. Knoploch"; Plaintiff's testimony that she helped with cleaning and chores around the house, although others did the heavy lifting; Plaintiff's testimony that she can carry her thirteen-pound baby for a short period of time and that she has a driver's license and drives one or two times a week for appointments or shopping, although her husband or daughter accompany her; the fact that Plaintiff denied any emergency room visits or hospital admissions; and that Plaintiff's subjective complaints "mostly not[ed] aggravation by standing and walking." *Id.*  In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Nevertheless, Plaintiff challenges the ALJ's consideration in this regard, arguing that the ALJ's conclusory boilerplate statement discounting Plaintiff's subjective statements is deficient and fails to "give a single specific reason for finding Plaintiff's allegations not supported by the

record and certainly did not address in adequate detail subjects that 20 C.F.R. § 404.1529 and SSR 16-3p require him to explore." *Plaintiff's Brief*, ECF No. 8, pp. 19–23; *Plaintiff's Reply Brief*, ECF No. 10, pp. 3–4. Plaintiff's arguments are not well taken. As detailed above, the ALJ considered objective medical evidence, including, *inter alia*, mostly normal motor strength; opinion evidence; Plaintiff's daily activities, complaints of pain; the precipitating and aggravating factors, *i.e.*, prolonged standing and walking; Plaintiff's medication, including, *inter alia*, the lack of medication side effects and the weaning off of opiates and relying on ibuprofen to manage her pain; and her treatment other than medication, *i.e.*, physical therapy, spinal injections, and no emergency room visits or hospital admissions. R. 72–79. The ALJ also noted Plaintiff's hearing testimony regarding her ability to walk her dog, which Plaintiff conceded at the hearing was inconsistent with Dr. Knoploch's notes. R. 77. In short, the ALJ detailed Plaintiff's hearing testimony at length and considered it in the context of the opinion evidence as well as objective medical findings, and ultimately found that Plaintiff's statements about her extreme limitations were not fully consistent with the overall record. R. 72–79. Based on this record, the Court cannot say that the ALJ failed to consider Plaintiff's subjective statements in accordance with the applicable regulation. *See* 20 C.F.R. § 404.1529(c).

Notably, even if the ALJ had not fully and expressly discussed all the regulatory factors, that failure "does not warrant remand, given that his credibility determination was supported by substantial evidence." *Lewis v. Comm'r of Soc. Sec.*, No. CV 15-1587, 2016 WL 4718215, at *7 (D.N.J. Sept. 9, 2016); *see also* SSR 16-3p (cautioning that "not all of the types of evidence described below will be available or relevant in every case") (referring to, *inter alia*, the regulatory factors under §§ 404.1529(c), 416.929(c)); *Brewington v. Comm'r of Soc. Sec.*, No. 21-CV-5482, 2024 WL 329529, at *11 n.17 (E.D. Pa. Jan. 29, 2024) ("The fact that an ALJ did

not discuss all the factors of 20 C.F.R. § 404.1529, including Brewington's type, dosage, effectiveness, and side effects of medication, does not warrant remand if substantial evidence otherwise supports the ALJ's credibility determination.") (citations omitted); *Alejandra D. v. Comm'r of Soc. Sec.*, No. CV 22-175, 2023 WL 2609134, at *7–8 (D.N.J. Mar. 22, 2023) ("Yet while the ALJ must provide 'specific reasons' for his findings, he need not set out an exhaustive discussion of every potential factor listed in the regulations.") (citations omitted); *Mason v. Colvin*, No. 15-1861, 2015 WL 6739108, at *6 (D.N.J. Nov. 3, 2015) ("The list [of factors contained in 20 C.F.R. § 404.1529(c)] is not comprehensive, nor is it mandatory for ALJs to go through each factor on the list in their opinions.") (citing 20 C.F.R. § 404.1529(c)(3)).

Moreover, the ALJ did not completely discount Plaintiff's subjective complaints; instead, his RFC analysis confirms that he took into consideration Plaintiff's complaints of pain. R. 71–79. The ALJ also explained that the RFC for a limited range of sedentary work "is supported by the claimant's history of surgery, with clinical findings of decreased range of motion, with some findings of muscle spasm and straight leg raise testing and one point, and with complaints mostly noting aggravation by standing and walking." R. 78; *see also Longboat v. Berryhill*, No. CV 17-146-E, 2018 WL 4157067, at *1 (W.D. Pa. Aug. 30, 2018) (finding, *inter alia*, that the "ALJ did not entirely discount Plaintiff's allegations of pain in his decision; rather, he appropriately found that Plaintiff indeed suffered from moderate pain, but still retained the capacity for light work with additional restrictions"); *Morel v. Colvin*, No. 14-2934, 2016 WL 1270758, at *6 (D.N.J. Apr. 1, 2016) ("The claimant need not be pain-free to be found 'not disabled.'"). In any event, as previously explained, the Court must affirm the ALJ's decision when it is supported by substantial evidence even if Plaintiff points to evidence that supports the opposite conclusion. *See Johnson*, 497 F. App'x at 201; *see also Lewis v. Comm'r of Soc. Sec.*, No. CV 15-1587, 2016

WL 4718215, at *7 (D.N.J. Sept. 9, 2016) ("The fact that the ALJ did not discuss all of the §
404.1529 factors does not warrant remand, given that his credibility determination was supported
by substantial evidence."); *Mason v. Colvin*, No. 15-1861, 2015 WL 6739108, at *6 (D.N.J. Nov.
3, 2015) ("The list [of factors contained in 20 C.F.R. § 404.1529(c)] is not comprehensive, nor is
it mandatory for ALJs to go through each factor on the list in their opinions.") (citing 20 C.F.R. §
404.1529(c)(3)).

For all these reasons, the Court concludes that the ALJ sufficiently explained his
reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are
supported by substantial evidence in the record and are therefore entitled to this Court's
deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306
F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony
regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v.
Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319,
322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where
"the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited
Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment
of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id*.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42
U.S.C. § 405(g).

Date:  March 7, 2024                               *s/Norah McCann King*
                                                   NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE

27